IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MESHWERKS, INC., a Utah corporation,<br><br>                      Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR SALES U.S.A., INC., a California corporation, GRACE & WILD, INC., d/b/a "DIVISION X," a Michigan corporation, 3D RECON, L.L.C., a Utah limited liability company, SAATCHI & SAATCHI NORTH AMERICA, INC., a California corporation, and JOHN DOES 1-10,<br><br>                      Defendants. | ORDER & MEMORANDUM DECISION<br><br><br><br>Case No. 2:06 CV 97 |

      This motion raises the question of whether copyright law protects three-dimensional digital models of commercial products when the digital models are intended to resemble the commercial product as closely as possible. Plaintiff Meshwerks, Inc., was hired by Defendant Grace & Wild, Inc. to create digital models of several Toyota vehicles. After completing the project, Meshwerks obtained copyright registration certificates covering the models. Meshwerks contends that Defendants Toyota Motor Sales U.S.A., Inc., Grace & Wild, 3D Recon, L.L.C., and Saatchi & Saatchi North America, Inc. (collectively, the "Toyota Defendants") violated Meshwerks's copyright by impermissibly using the models that Meshwerks created. Meshwerks also alleges that Grace & Wild failed to fully pay Meshwerks for the digital modeling that it performed.

The Toyota Defendants have moved for summary judgment on Meshwerks's copyright infringement claims, asserting that the digital models created by Meshwerks are not copyrightable. Further, the Toyota Defendants argue that, should they succeed on their motion for summary judgment, the court should decline to exercise supplemental jurisdiction over Meshwerks's remaining state law claim for breach of contract. The court agrees with the Toyota Defendants' position and therefore grants the motion for summary judgment and declines to exercise supplemental jurisdiction over Meshwerks's breach of contract claim.

**Background**

As part of its advertising strategy, Toyota Motor Sales and its advertising agent, Saatchi & Saatchi sought out a company to create three-dimensional animated images of several Toyota vehicles. Toyota planned on using the models on the Internet and in several other types of promotional media. Saatchi & Saatchi contacted Grace & Wild and asked it to develop the images. Grace & Wild, in turn, hired Meshwerks to create three-dimensional digital models of the Toyota vehicles that would be used to create the final images.

The parties present different descriptions of the digital-modeling process. The Toyota Defendants assert that the use of off-the-shelf computer software enables the quick creation of product-accurate models. In contrast, Meshwerks claims that computer software is used to create an initial rough sketch of an object, but that "the skill and creativity of the graphic sculptor," who uses computer software as a tool, creates the final product. (Plf.'s Memo. in Opp'n to the Toyota Defs. Mot. for Part. Summ. J. ii (dkt. #19).)

Meshwerks began the modeling process by measuring the physical distance between designated points on each Toyota vehicle. To accomplish this task, Meshwerks placed tape in a grid pattern over each car and then, using an articulated arm measuring over six feet, marked

each point at which the tape intersected. The distance between the points of intersection was then measured and inputted into a computer. Using the measurements as a guide, the computer software then created lines that formed a rough digital representation of the vehicle, resembling a wireframe model.[1]

According to Meshwerks, the individual creating the digital model must manipulate the data initially obtained from the vehicle measurements to effectively create the illusion of a three-dimensional image on a two-dimensional screen in the most efficient manner possible. Given the necessity of manipulating the data obtained through measurement alone, Meshwerks disputes the Toyota Defendants' characterization of the final digital models as absolutely product accurate. In fact, Meshwerks contends that truly product-accurate models would be worthless because they would not create the desired three-dimensional effect. In short, Meshwerks asserts that the modeling process is a creative one, and that the creative nature of the process is borne out by the fact that no two digital models of an object will be exactly alike.

After finishing the vehicle models, Meshwerks provided the digital files to Saatchi & Saatchi. Meshwerks also made a print-out of the data comprising each of the digital files and sought copyright protection of the material, claiming that the print-outs represented copyrightable non-dramatic literary works or computer programs. The United States Copyright Office issued copyright registration certificates to Meshwerks covering the submitted files.

Meshwerks's copyright infringement claim is based on Meshwerks's belief that the digital models it created have been distributed among the Toyota Defendants and that those

---

[1] According to Meshwerks, some components of the vehicles, such as the vehicles' headlights, could not be measured. Meshwerks took photographs of those components and then, using the photographs for reference, created the wireframe model of the components from scratch.

models have been used repeatedly without Meshwerks's permission.  The Toyota Defendants claim that summary judgment on Meshwerks's copyright infringement claims is warranted because the digital models are not entitled to copyright protection.

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

The parties do not truly dispute the material facts underlying Meshwerks's copyright claim.  Rather, the parties dispute the manner in which those facts are characterized.  The only disagreement between the parties concerns whether the process of creating the digital models is dominated by creativity or technical know-how.  But even the Toyota Defendants acknowledge that the modeling process is not entirely mechanical in nature.  (See Reply Memo. in Supp. of Defs. Mot. for Part. Summ. J. 11 (dkt. #25) ("In a manner of speaking, it took 'creative judgments' to decide how best to depict the three-dimensional Vehicle in a two-dimensional display.").)  The parties' disagreement concerning the accurate characterization of the modeling process does not preclude the entry of summary judgment on Meshwerks's copyright infringement claim.  This is so because, even if Meshwerks's characterization of the modeling

process is accepted as accurate, the digital models are nevertheless not copyrightable.[2] Accordingly this matter can be resolved on summary judgment. See Magic Mktg., Inc. v. Mailing Servs. of Pittsburgh, Inc., 634 F. Supp. 769 (W.D. Pa. 1986) ("The issue of copyrightability is typically resolved by a motion for summary judgment."); cf. Sem-Torq, Inc. v. K Mart Corp., 936 F.2d 851, 853 (6th Cir. 1991) ("Copyrightability is often resolved on summary judgment.").

## Analysis

**I. Copyright Infringement**

The Copyright Act provides that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). "To qualify for copyright protection, a work must be original to the author." Feist Pub., Inc. v. Rural Tele. Serv. Co., 499 U.S. 340, 345 (1991) (citing Harper & Row, Pubs., Inc. v. Nat. Enterps., 471 U.S. 539, 547-49 (1985)). In fact, originality is "[t]he sine qua non of copyright." Id. The requirement of originality is met if the author created the work and the creation involved a creative component. See id. ("Original . . . means only that the work was independently created by the author . . . and . . . possesses at least some minimal degree of creativity."). With regard to the presence of creativity, the United States Supreme Court has stated: "To be sure, the requisite level of creativity is extremely low; even a

---

[2]Meshwerks filed a motion to strike portions of the declaration of Brent Feeman, which was submitted by the Toyota Defendants in support of their motion for partial summary judgment. In an apparent attempt to address the concerns raised by Meshwerks, the Toyota Defendants responded by submitting a supplemental declaration of Mr. Feeman. But Meshwerks contends that the supplemental declaration suffers from deficiencies similar to those present in Mr. Feeman's first declaration. Nevertheless, because the court does not rely on the paragraphs of Mr. Feeman's declaration that Meshwerks seeks to strike and because the court adopts Meshwerks's recitation and characterization of the digital modeling process, the motion to strike Mr. Feeman's declaration is denied as moot.

slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble, or obvious it might be." Id. (internal quotation omitted).

The parties devote some time in their briefs to the presence of a presumption of copyright protection flowing from the registration certificates obtained by Meshwerks. See Grundberg v. Upjohn Co., 137 F.R.D. 372, 382 (D. Utah 1991) ("The registration certificate is prima facie evidence of copyright validity.") The effect of the presumption in this case is not in dispute. The Toyota Defendants have the burden of proving that the digital models created by Meshwerks are not copyrightable. See id. ("[T]he presumption is not absolute: 'possession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable.'" (quoting Whimsicality Inc. v. Rubie's Costume Co., 891 F.2d 452, 455 (2d Cir. 1989))). The Toyota Defendants attack the copyrightability of the Meshwerks models on creativity grounds, contending that the models fail to "make the grade," because they do not exhibit the "creative spark" that serves as the necessary predicate for copyright protection, Feist, 499 U.S. at 345.

In support of their position, the Toyota Defendants cite ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc., 402 F.3d 700 (6th Cir. 2005), in which an auto parts dealer claimed that a competitor copied illustrations used in an auto parts catalog. See id. at 702-03, 712. The illustrations in ATC Distribution Group were "hand-drawn sketches of transmissions parts," that were originally "copied from photographs cut out of competitors' catalogs." Id. In reaching the conclusion that the hand-drawn illustrations were not entitled to copyright protection, the Sixth Circuit focused on the lack of creative intent, stating that "[t]he illustrations were intended to be as accurate as possible in reproducing the parts shown in the

photographs on which they were based, a form of slavish copying that is the antithesis of originality." Id. (citing J. Thomas Distribs. v. Greenline Distribs., 100 F.3d 956 (6th Cir. 1996), available at No. 95-2100, 1996 WL 636138 at *1 (6th Cir. Oct. 31, 1996) (unpublished opinion) ("Plaintiff's spindle bearing was drawn with the express intention of duplicating on paper the appearance of an actual spindle bearing.  Its reproduction involved absolutely no creative spark whatsoever.")).

Meshwerks contends that its modeling process involved much more that mere "slavish copying," id.  Instead, Meshwerk analogizes its process to that undertaken by commercial photographers.  In particular, Meshwerks relies on SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp. 2d 301 (S.D.N.Y. 2000), in which the court held that product photographs of mirrored picture frames were entitled to copyright protection, id. at 311.

The court in SHL Imaging, Inc. began its analysis with the acknowledgment that "[t]here is no uniform test to determine the copyrightability of photographs." Id. at 309-10.  Citing the "almost limitless creative potential" offered by the medium of photography, the court commented that "[t]he elements that combine to satisfy Feist's minimal 'spark of creativity' standard will necessarily vary depending on the photographer's creative choices." SHL Imaging, Inc., 117 F. Supp. 2d at 310.  The court went on to state that "[t]he cumulative impact of these technical and artistic choices becomes manifest in renowned portraits, such as 'Oscar Wilde 18.' The measure or originality becomes more difficult to gauge as one moves from sublime expression to simple reproduction." Id.

The SHL Imaging, Inc. court viewed the product photographs that were the subject of the parties' dispute as less than sublime expression, but much more than simple reproduction.  See id. at 311 ("While Lindner's works may not be as creative as a portrait by Dianne Arbus, they

show artistic judgment and therefore meet the Feist standard."). In reaching its conclusion that the product photographs were protected by copyright, the court focused on the artistic choices made by the photographer. See id. at 311 ("What makes plaintiff's photographs original is the totality of the precise lighting selection, angle of the camera, lens and filter selection."). Nevertheless, the court noted that the copyright protection afforded to the photographs was narrow, stating that "[p]laintiff cannot prevent others from photographing the same frames, or using the same lighting techniques and blue sky reflection in the mirrors[;] . . . [p]ractically, the plaintiff's works are only protected from verbatim copying." Id.

The models created by Meshwerks are more analogous to the illustrations in ATD Distribution Group than to the photographs in SHL Imaging, Inc. The critical distinction between the present case and SHL Imaging, Inc. is the lack of a creative recasting of the Toyota vehicles. The photographer in SHL Imaging, Inc. used his camera to introduce new creative elements that elevated his photographs beyond mere replication. The illustrators in ATC Distribution Group, on the other hand, utilized their skill to reproduce, as accurately as possible, the auto parts they were attempting to depict. Similarly, in this case, Meshwerks's intent was to replicate, as exactly as possible, the image of certain Toyota vehicles. Although the tools used by the illustrators in ATC Distribution Group vary from the digital-modeling tools used by Meshwerks, the endeavor was identical: product-accurate representation without the introduction of new creative elements.

Todd v. Montana Silversmiths, Inc., 379 F. Supp. 2d 1110 (D. Colo. 2005), provides a helpful example of the distinction drawn in copyright law between skilled craft and creative, protectable, works. In Todd, a jewelry maker claimed that a competitor had impermissibly copied jewelry that the plaintiff had designed to resemble barbed wire. Id. at 1111. The court

concluded that the plaintiff's design was not protected by copyright law. See id. at 1113-14. According to the Todd court, "[w]hile Plaintiff is no doubt a skilled artist capable of making jewelry with a certain aesthetic appeal, she has failed to show what copyrightable features she has added to her work to separate it from ordinary public domain barbed-wire." Id. at 1113. The court, while acknowledging the skill and judgment involved in the design process, nevertheless declined to extend copyright protection to the unoriginal result of that process, stating that "[t]he fact remains that for all her aesthetic choices, the final arrangement of the elements in her jewelry still corresponds to the arrangement of public domain barbed-wire." Id.

Like the jeweler in Todd, Meshwerks no doubt made many judgments that required both skill and technical know-how. Those judgments may have even involved "creativity," as that word is commonly used. But the digital models created by Meshwerks are not original. Just as the jewelry in Todd ultimately corresponded to common barbed-wire, the digital models created by Meshwerks correspond to the Toyota vehicles they were intended to represent. Accordingly, Meshwerks's models are not protected by copyright law and the Toyota Defendants are entitled to summary judgment on Meshwerks's copyright claims.

**II. State Law Claims**

28 U.S.C. § 1367(c) allows federal district courts to decline exercising jurisdiction over state law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In this case, the only cause of action alleged by Meshwerks that is not dependent on federal copyright law is a breach of contract claim against Grace & Wild. Meshwerks's complaint does not allege that this court has original jurisdiction over that contract claim. Given the court's ruling on Meshwerks's copyright claims, the court

declines to exercise supplemental jurisdiction over Meshwerks's contract claim.  Accordingly, Meshwerks's contract claim is dismissed.

### Conclusion

Although a great deal of skill and effort was involved in the creation of Meshwerks's three-dimensional digital models, those models do not meet the originality requirement established by copyright law.  Accordingly, the models are not entitled to copyright protection.  As a result, the Toyota Defendants are entitled to summary judgment on Meshwerks's copyright claims.  Further, the court declines to exercise supplemental jurisdiction over Meshwerks's breach of contract claim and that claim is therefore dismissed.

For the foregoing reasons, the Toyota Defendants' Motion for Partial Summary Judgment and Dismissal of Remaining Claim (dkt. #11) is GRANTED and Plaintiff's Motion to Strike Feeman Declaration (dkt. #17) is DENIED as moot.

DATED this 12th day of September, 2006.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
United States District Judge